

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EWS:ATA
F. #2024R00343

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 30, 2026

By ECF & E-Mail

The Honorable Lara K. Eshkenazi
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   United States v. Jonathan Kosial
> Magistrate No. 25-275

Dear Judge Eshkenazi:

The government respectfully submits this letter in support of its request that the Court enter an order of detention against the defendant Jonathan Kosial, who will appear before the Court later today at 2 p.m. for his initial appearance. The defendant is charged in a criminal complaint with bank robbery, in violation of Title 18, United States Code, Section 2113(a). For the reasons set forth below, the defendant should be detained because he is a danger to the community, and no combination of conditions can mitigate these risks.

I.      Background

The charges in the complaint are based upon the defendant's participation in a brazen, two-person bank robbery of a Citibank branch, located at 89-50 164 Street, in Queens, New York (the "Bank") on January 2, 2024. Much of the robbery was recorded by interior bank surveillance video footage.

As described in the complaint, at approximately 12:10 p.m., an individual identified in the complaint as Robber 1 entered the Bank wearing all black clothing and ski masks. Robber 1 approached the teller and passed a note demanding $20,000. The note threatened, "me and my partner have a gun and we will shoot you or anyone in this bank if you notify any staff, police or security." The note also stated, "Do not put any tracking device in the money or I will kill you." At one point while speaking to the bank teller, Robber 1 held up a black plastic bag in a menacing fashion as if to suggest, as threatened in the note, that he was armed with a loaded gun. Robber 1 then waived his co-conspirator (identified in the Complaint as "Robber 2," and, together with Robber 1, the "Robbers") inside the Bank, who, like Robber 1, was dressed in all black clothing with a black ski mask.

As the first employee walked toward a back room in the Bank, Robber 1 approached another teller window where a customer was attempting to deposit $1,800 in cash. Robber 1 grabbed the money from the counter, and both Robbers fled the Bank, heading westbound.

Roughly five minutes later, the Robbers were observed changing clothes behind a nearby building. After changing clothes, the robbers hopped a fence and fled on foot towards Jamaica Avenue in Queens, New York, leaving behind the black bag used to commit the bank robbery. Law enforcement recovered the bag and found a black ski mask and glue gun. The black ski mask was tested for DNA evidence, which revealed that one of three DNA samples found on the mask belong to the defendant. Law enforcement also obtained historical location information for the defendant's phone, which showed that the defendant was in the vicinity of the Bank within minutes of the robbery.

## II. Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

2

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

III.    Argument

The government seeks detention under 18 U.S.C. § 3142(f)(1)(A) as bank robbery is a crime of violence. See United States v. Hendricks, 921 F.3d 320 (2d Cir. 2019). For the reasons described below, the government has met its burden of establishing the defendant's dangerousness and risk of flight sufficient to require his detention pending trial. As a result, no condition or combination of conditions will ensure his appearance before the Court or the safety of the community.

A.    Nature of Circumstances and the Defendant's Danger to the Community

Given the conduct outlined above, releasing the defendant would present a serious danger to the community. Bank robbery is a crime of violence, see Hendricks, 921 F.3d at 320, and the facts of the offense show the defendant is particularly prone to dangerous behavior. The defendant and his co-conspirator threatened to shoot and kill employees if they refused to comply with their demands. They brought a glue gun concealed in a black bag to be used—and was used—in a menacing fashion as if to suggest, as threatened in the note, that they were armed with a loaded gun. The defendant then stole $1,800 and fled the scene. The defendant's behavior shows a disregard for the safety and wellbeing of the community, and the nature and circumstances of the offense accordingly weigh in favor of detention.

B.    Weight of Evidence

As noted above, there is substantial evidence of the defendant's involvement in the bank robbery. Video surveillance captured the defendant and his co-conspirator during the commission of the offense, as well as their later escape outside a nearby church. The defendant was observed changing clothes and abandoning the black bag used to commit the robbery. Fingerprints found on that same black bag are consistent with the defendant's fingerprints. A black ski mask found inside the bag was swabbed for DNA, which was also found to be consistent with the defendant's DNA. Moreover, cell-site data shows that the defendant was within the vicinity

3

of the bank minutes of it being robbed.

Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee, " as further described below.  United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); accord United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (explaining that where "the evidence against defendants is strong, the incentive for relocation is increased").

C.  Risk of Flight

The government obtained a complaint and arrest warrant for the defendant on September 16, 2025, before he was finally located and arrested on April 29, 2026.  Before the defendant's arrest, a law enforcement officer repeatedly contacted the defendant through text messages, alerting him of the federal arrest warrant.  The officer and the defendant messaged back and forth, but the defendant refused to turn himself over to the police.  When the law enforcement located the defendant on April 29, 2026, and attempted to arrest him, the defendant fled on foot and attempted to further evade police by jumping onto a scooter that was passing by the scene.

Likewise, the maximum penalty for bank robbery is twenty to twenty-five years. See 18 U.S.C. § 2113(a)), § 2113(d).[1]  While the defendant has only been convicted of one misdemeanor, for assault in the third degree, his exposure to a bank robbery conviction, which carries a significant potential punishment, provides further incentive to flee.  Based upon the defendant's ongoing attempts to evade arrest and the significant potential punishment for bank robbery, he carries a risk of flight that no conditions of release can deter.

---

[1] The maximum term for § 2113(a) is 20 years. The maximum term for §2113(d) is 25 years. Note that while §2113(d) is a Class B felony, § 2113(a) is a Class C felony.

IV.     Conclusion

        For the foregoing reasons, the United States respectfully requests that the Court issue an order of detention against the defendant.


                                          Respectfully submitted,

                                          JOSEPH NOCELLA, JR.
                                          United States Attorney

                           By:      *Ashleigh Atasoy*
                                          Ashleigh Atasoy
                                          Assistant U.S. Attorney
                                          (718) 254-6236

c.c.     Counsel of Record (by ECF and E-Mail)

5